UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 18-21218-CIV-DPG

CASILDA ROMERO,
      Plaintiff,

v.

EMILIA DIAZ-FOX,
      Defendant.

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, WITH INCORPORATED MEMORANDUM OF LAW

Defendant file this Motion.  A Statement of Undisputed Material Facts is filed separately and is cited to as ("Facts ¶ ___").  Defendant states:

## BACKGROUND

The Plaintiff filed a Complaint alleging violations of the Fair Labor Standards Act (29 U.S.C. § 201 *et seq.*) setting forth one (1) substantive count pursuant to the Fair Labor Standards Act ("FLSA"), for alleged overtime violations. [D.E. 1].  Plaintiff seeks back wages, liquidated damages, attorneys' fees, and costs.  *Id.*  The basic premise of the case is that the Plaintiff was a companion to Emilia Fernandez Diaz a 100+ year-old woman (Defendant's mother—Defendant is hereinafter referred to as "Diaz" and the mother as "Fernandez") who was bedridden in her small Miami home that she owned since 1959 and could not speak.  (Facts ¶ 1).  Plaintiff provided companionship services to Fernandez, as Fernandez could barely move and could not leave the *bed* in which she laid, much less the room or house. (Facts ¶ 1). Plaintiff provided these services for approximately two (2) years and four (4) months, working at night 5:00 p.m. – 8:30 a.m. Monday – Thursday and on weekends, Friday at 5:00 p.m. to Monday morning at 8:30 a.m.  (Facts ¶ 1).  No one else lived in the house the whole time Plaintiff worked there. (Facts ¶ 1).  No one else visited the house except for Diaz and her brother one time per week on most weekends for 30-60 minutes.  (Facts ¶ 1.  Iris Vinas, the woman who cared for Fernandez when Plaintiff was not

caring for her, hired Plaintiff. (Facts ¶ 1). Fernandez's money was used to pay Plaintiff, as she had funds from a pension and social security. (Facts ¶ 1). Fernandez owned the home (since 1959), not Diaz, and Fernandez's son's monies were used to pay the utilities and other household expenses. (Facts ¶ 2). Plaintiff worked during the day cleaning houses and admitted while she worked for Fernandez *that she worked* "*taking care of a lady [Fernandez] at night.*" (Facts ¶ 2). We do not know why Diaz was sued as the logical defendant is Fernandez and we also do not know why Diaz's brother was not sued. Plaintiff readily admitted in her deposition that she resided in Fernandez's home, that she provided companionship services to Fernandez, could not really take her eyes off of her, and because the massive amount of hours that she was present on the premises per week (around 125.5) (Facts ¶ 2), she cannot possibly demonstrate that she performed 20% of her time (25.1 hrs/wk) performing general household duties unrelated to the care of Fernandez, as there was no other part of the house other than Fernandez's bedroom and the kitchen where Fernandez's meals were cooked that needed cleaning—no messy bedrooms or bathrooms, no car going in and out of a garage, no taking of care of the families children or doing laundry for children or other adults, etc. (Facts ¶ 2).

Summary judgment is appropriate because: 1) Diaz Fox is not an employer under the FLSA; 2) Plaintiff was not Diaz Fox's employee; and 3) Plaintiff is exempt as she provided companionship services, and she does not meet the exception which requires her to show that she spent at least 20% of her time general household work that did not benefit Fernandez Diaz care or companionship. The Court should note that Plaintiff is a serial plaintiff who has sued before under the FLSA represented by the same lawyer, yet claims she worked for Diaz Fox for approximately two (2) years and four (4) months without being paid overtime without ever speaking to anyone about her pay, and then suit was brought without any presuit demand. (Facts ¶¶ 1-38).

## MEMORANDUM OF LAW

I.    THE RELEVANT LEGAL STANDARDS FOR GRANTING A
      MOTION FOR SUMMARY JUDGMENT.

SJ under Federal Rule Civil Procedure 56(c) is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).

II.   SJ IS WARRANTED BECAUSE OF NO COVERAGE.

FLSA claims can be proven through either individual coverage or enterprise coverage. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292 (11th Cir. 2011). The Court should also note that Plaintiffs completely failed to plead individual coverage, but regardless, had they, neither enterprise coverage nor individual coverage are affirmative defenses but rather are part of the prima facie case of the Plaintiffs to prove entitlement to overtime, *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1277 n.68 (11th Cir. 2008). In fact, Plaintiff's theory regarding how Diaz Fox could be liable is meritless and there is no coverage in this case, because Plaintiff claims that she was employed by a third party to perform general household work. *Cardenas v. Aragon Towers Condominium Ass'n, Inc.*, 451 Fed. Appx. 898 (11th Cir. 2012) (affirming grant of summary judgment on lack of enterprise coverage and finding § 206(f) does not give coverage when plaintiff was employed by a third party to perform general house cleaning only); *see also Buckner v. Florida Rehabilitation Network*, 489 F.3d 1151 (11th Cir. 2007) (holding same).

A.    Individual Coverage

For FLSA individual coverage to apply, a plaintiff must prove that he or she is "engaged in commerce or in the production of goods for commerce." *See* 29 U.S.C. § 207. To determine whether an employee performed such work, a court must focus its inquiry on the activities of the employee and not on the business of the employer. *Thorne v. All Restoration Servs., Inc.,* 448

F.3d 1264, 1267-68 (11th Cir. 2006). In *Thorne*, the Eleventh Circuit held that it was "the intent of Congress to regulate only activities constituting interstate commerce, not activities merely affecting commerce", and thus, an employee must be "engaged in commerce", which means that the employee must be "directly participating in the actual movement of persons or things in interstate commerce". *Thorne*, 448 F.3d at 1266. Here, Plaintiff was not involved in the actual movement of people or things across state lines. (Facts ¶ ).

### B. <u>Enterprise Coverage</u>

Even after *Polycarpe v. E&S Landscaping Service, Inc.,* 616 F.3d 1217 (11th Cir. 2010), a plaintiff asserting the existence of enterprise coverage must still prove that two or more employees regularly and recurrently handled goods or materials that moved across state lines. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292 (11th Cir. 2011); *Lira v. Matthew's Marine Air Conditioners, Inc.*, Case No. 09-61178-CIV-ZLOCH (finding that enterprise coverage was not present, and thus entering judgment for defendants). Plaintiff cannot prove this prong either, because Diaz Fox does not have gross annual sales that exceed $500,000 annually, nor did she nor does she employ anyone. (Defendant's Affidavit ¶ 52). Thus, despite the fact that *both* prongs need to be met to establish FLSA enterprise coverage (29 U.S.C. § 203(s)(1)(A)), neither prong can be met in this case, and Plaintiff has failed to set forth any material issues of fact in this regard.

Diaz Fox's potential liability is only derivative to that of an enterprise, which Plaintiff cannot prove that there is an enterprise here (as set forth above), and thus summary judgment is required. *Zarate v. Jamie Underground, Inc.*, 629 F. Supp. 2d 1328 (S.D. Fla. 2009).

### C. <u>The Employer</u>

The employer of Plaintiff was Fernandez Diaz, but Plaintiff chose not to sue her, probably because Fernandez was not an employer either and was certainly not an enterprise.

The issue of the employer under the FLSA is determined by the "*economic reality*" of the relationship. *Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947); *Antenor v. D & S Farms*, 88 F.3d 925, 933 (11th Cir. 1996). "[T]*he 'economic reality' of all the circumstances concerning whether the putative employee is economically dependent upon the alleged employer*" are considered. *Aimable v. Long and Scott Farms*, 20 F.3d 434, 439 (11th Cir. 1994) *cert. denied*, 513 U.S. 943 (1994). Thus, the courts should look at the surrounding circumstances of the whole activity. Several factors are utilized to assess the economic reality of the relationship:

> In determining whether a joint employment relationship exists, the courts consider several relevant factors: (1) the nature and degree of the putative employer's control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the right, directly or indirectly, to hire, fire, or modify the workers' employment conditions; (4) the power to determine the workers' pay rates or methods of payment; (5) the preparation of payroll and payment of workers' wages; (6) the ownership of the facilities where the work occurred; (7) whether the worker performed a line job integral to the end product; and (8) the relative investment in equipment and facilities. [] *See, Antenor*, 88 F.3d at 932 (citing Aimable, 20 F.3d at 440-45); *Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313, 1326 (S.D. Fla. 2001).

*Jeanneret v. Aron's Eats Coast Towing, Inc.*, 2002 WL 32004470, *3 (S.D. Fla. 2005). "*Whether or not the parties in question intended to create an employment relationship is irrelevant to the economic realities test.*" *Jeanneret*, 2002 WL 32114470 at *3. The determination of employment status is a question of law. *Atenor*, 88 F.3d at 929. Subsidiary findings are considered issues of fact. *Patel v. Wargo*, 803 F.2d 632, 634 n.1 (11th Cir. 1986).

In *Jeanneret*, the Court addressed the issue of whether an administrative payroll company (Sunshine) was an employer under FLSA. *Jeanneret*, 2002 WL 32114470 at *3. In determining that Sunshine was not an employer, the Court found that Sunshine did not exercise control over the employees, did not own the facilities where plaintiff worked, did not supervise or hire/fire the employee, and did not set rates of pay. *Id.* at *4-*8. Rather, Sunshine only did payroll services. *Id.*

Generally, a Defendant "*cannot be held individually liable for violating the overtime provisions of the FLSA unless he is an 'employer' within the meaning of the Act. 29 U.S.C. § 207(a)(1) ...*" *Alvarez Perez v. Sanford-Orlando Kennel Club*, Inc., 515 F.3d 1302 (11th Cir. 2008) (citation omitted).  Section 203 broadly defines an employer as "*any person acting directly or indirectly in the interest of an employer in relation to the employee.*" 29 U.S.C. § 203(d). "*Whether an individual falls within this definition 'does not depend on technical or isolated factors but rather on circumstances of the whole activity'*" *Alvarez Perez*, 515 F.3d at 1160.

In *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986), the court concluded that status as a corporate officer alone is insufficient to render an individual an "*employer*" to hold the officer personally liable for unpaid wages. Rather, the court held in *Patel* that to be personally liable as an "*employer,*" a corporate officer "*must either be involved in the day-to-day operation or have some direct responsibility for the supervision of employee.*" *Id*. at 638. In determining whether a corporate officer is an "*employer,*" the courts have inquired as to whether the officer was involved in compensation of employees, the hiring or firing of employees or other matters "*in relation to an employee.*" *Alvarez Perez*, 515 F.3d at 1161. *See also*, *Alvarez Perez*, 515 F.3d at 1160 (holding that "*there was insufficient evidence for a jury reasonably to conclude that Collins, Sr. was either involved in the day-to-day operation of the Longwood racetrack facility or was directly responsible for the supervision of employees during the relevant years.*"). Also, where "*the corporate Defendant is not subject to suit, and since [the alleged officer's] liability is only derivative to that of the corporate Defendant's, Patel v. Wargo, 803 F.2d 632, 637, 11th Cir. 1986), [the corporate officer] is entitled to summary judgment on that ground.*" *Casseus v. First Eagle, L.L.C.*, 2008 WL 1782363, 5 (S.D. Fla. 2008).  In the instant case, the Plaintiff failed to demonstrate that the Defendant was Plaintiff's employer and did not meet the criteria under the "economic reality of the relationship" or "the circumstances of the situation" criteria.

6

### III.  EVEN IF PLAINTIFF COULD PROVE THAT DIAZ FOX WAS AN ENTERPRISE OR THAT THERE WAS INDIVIDUAL COVERAGE, PLAINTIFF IS EXEMPT.

#### A.  The Live-in Domestic Service Exemption

First, the FLSA provides that "any employee who is employed in a domestic service in a household and who resides in such a household" is not entitled to overtime. 29 U.S.C. § 213(b)(21) (the "Live-in Domestic Service Exemption"); 29 C.F.R. § 552.102(a) ("section 13(b)(21) provides an exemption from the Act's overtime requirements for domestic service employees who reside in the household where employed."). "The term includes services performed by employees such as companions, babysitters, cooks, waiters, butlers, valets, maids, housekeepers, nannies, nurses, janitors, laundresses, caretakers . . . ." 29 C.F.R. § 552.3; *U.S. v. Sabhnani*, 599 F. 3d 215, 256 (2d Cir. 2010) ("Because there is no doubt that Samirah and Enung lived in the Sabhnanis' house and did so as permanent residents for a considerable time, we conclude that the maids were 'employee[s] who [were] employed in domestic service in a household who reside[d] in such household' for the purpose of § 213(b)(21) exemption."); *Almeida v. Aguinaga*, 456 F. Supp. 2d 505, 508 (S.D.N.Y. 2006) (plaintiff considered a domestic servant and therefore not entitled to overtime compensation under FLSA); see also U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter on Fair Labor Standards Act (June 7, 1974), available at 1974 WL 38711 ("The housekeeper employed in that household, however, would be subject to the $1.90 an hour minimum wage, but she would be exempt from the Act's overtime provisions, since employees employed in domestic service in a household who reside in such a household are exempt from the Act's overtime requirements.").

A live-in domestic service employee must reside on the employer's premises either "permanently" or for "extended periods of time." Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60,454, 60,474 (Oct. 1, 2013).  This Court explained:

> The Department of Labor recently stated that a domestic service employee is considered to be a "live-in" domestic service employee if she "resides on his or her employer's premises on a 'permanent basis' or for 'extended periods of time.'" Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60,454, 60, 474 (Oct. 1, 2013); see also 29 C.F.R. 785.23. "Further, in accordance with the Department's existing policy, employees who work and sleep on the employers premises for five days a week (120 hours or more) are considered to reside on the employer's premises for 'extended periods of time.'" Id. "if less than 120 hours per week is spent working and sleeping on the employer's premises, five consecutive days or nights would also qualify as residing on the premises for extended periods of time." Id. "For example, employees who reside on the employer's premises five consecutive days from 9:00 a.m. Monday until 5:00 p.m. Friday (sleeping four straight nights on the premises) would be considered to reside on the employer's premises for an extended period of time." Id.

*Quintero v. Lopes*, No. 15-21162-CIV-LENARD, 2016 WL 7508264, at *6 (S.D. Fla. June 6, 2016). Hence, a worker resides on the employer's premises for an "extended period of time" when she (i) lives, works and sleeps on the employer's premises for five days a week (120 hours or more), or (ii) spends less than 120 hours per week working and sleeping on the employer's premises, but spends five consecutive days or nights residing on the premises. *See* DOL Field Operation Handbook § 31b20.

Here, the Plaintiff testified she lived on the premises for 125.5 hours per week, provided companionship services to Fernandez Diaz, and she is thus clearly exempt. (Facts ¶¶ 1). In this case, Plaintiff admits that she was required to sleep overnight seven days a week and worked 125.5 hours per week at Fernandez's home. (Facts ¶ 1) (citing Complaint ¶¶ 9, 11); (Plaintiff's Sworn Declaration ¶¶ 8-10)). Accordingly, Plaintiff is a live-in domestic service employee and pursuant to the Live-in-Domestic Service Exemption, is exempt from overtime pay.

**B. The Companionship Services Exemption.**

The FLSA provides for both an overtime exemption and a minimum wage exemption for "any employee employed in domestic service employment to provide companionship services for

individuals who . . . are unable to care for themselves." 29 U.S.C. § 213(a)(15).[1]  Pursuant to implementing regulations, "[c]ompanionship services" are defined as "fellowship, care and protection for a person who . . . cannot care for his or her needs.  Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services. They may also include the performance of general household work: *Provided however*, [t]hat such work is incidental, *i.e.*, does not exceed 20 percent of the total weekly hours worked." 29 C.F.R. § 552.6 (1975) (emphasis in original).

The U.S. Department of Labor's regulations have further defined the contours of the exemption:

> As used in section 13(a)(15) of the Act, the term companionship services shall mean those services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs. Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services. They may also include the performance of general household work: Provided, however that such work is incidental, *i.e.*, does not exceed 20 percent of the total weekly hours worked. The term "companionship services" does not include services relating to the care and protection of the aged or infirm which require and are performed by trained personnel, such as a registered or practical nurse.

29 C.F.R. § 552.6 (companionship services for the aged or infirm) (emphasis in original). "*The companion must perform the services with respect to the aged or infirm persons and not generally to other persons*." 29 C.F.R. § 552.106.

An opinion that is particularly persuasive is *Kefeenie v. Gloria Martin Trust*, 2018 WL 4301558 (S.D. Fla.). There, the court noted that work under

---

[1] Section 213(a)(15) (exemptions from the minimum wage and maximum hour requirements) of the FLSA states that: "*[t]he provisions of section 206 [minimum wage requirements] . . . and section 207 [maximum hour requirements] of this title shall not apply with respect to – (15) . . . any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary).*" 29 U.S.C. § 213(a)(15) (emphasis added).

the Companionship Exemption includes "such activities as cleaning the patient's bedroom, bathroom or kitchen, picking up groceries, medicine, and dry cleaning would be related to personal care of the patient and would be the type of household work that would be exempt work for purpose of section 13(a)(15) of the FLSA." U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter on Fair Labor Standards Act (March 16, 1995), available at 1995 WL 1032475. Employees falling within the Companionship Exemption include caretakers. 29 C.F.R. § 552.3. "Considering the history and development of the home care industry, it is fair and reasonable for the exemption to benefit home care recipients and their families when the families directly hire domestic service workers; the result is that the ordinary family will not also incur the financial burden of overtime pay." *Kefeenie*, 2018 WL 4301558 (quoting *Tinsley v. Covenant Care Serv., LLC*, 228 F. Supp. 3d 911, 918 (E.D. Mo. 2017)). Companionship services also include "general household work," so long as the general household work "does not exceed 20 percent of the total weekly hours worked." 29 C.F.R. § 552.6. In *Kefeenie*, the court was persuaded that since the plaintiff was the sole caretaker of the mother, and also performed tasks that benefited her, including arranging for maintenance work on the property, the plaintiff was performing exempt companionship work. The court cited approvingly to *Rodriguez v. Jones Boat Yard, Inc.*, 2010 WL 7325250 (S.D. Fla.) (granting summary judgment to defendants under the companionship services exemption); *Feldman v. Bhrags Home Care, Inc.*, 2017 WL 1274055 (E.D. N.Y.) (granting judgment on the pleadings to employer because plaintiff's services constituted exempt companionship services.).

An opinion letter issued by the U.S. Department of Labor ("USDOL") expanded on the distinction between household work relating to personal care, as compared to general household work subject to the 20% limitation. Specifically, "household work that relate[s] to the care of the aged or infirm person," including "meal preparation, bed making, washing of clothes, and other

similar services" as well as "cleaning the patient's bedroom, bathroom or kitchen, picking up groceries, medicine, and dry cleaning" are "the type of household work that would be exempt...." U.S. Department of Labor, Opinion Letter on Fair Labor Standards Act (March 16, 1995), 1995 WL 1032475 ("DOL Opinion Letter"), at *1. In contrast, "activities involving heavy cleaning such as cleaning refrigerators, ovens, trash or garbage removal and cleaning the rest of a 'trashy' house would be general household work or nonexempt work that is subject to the 20 percent time limitation." *Id.* Courts in this District rely on the DOL Opinion Letter when considering whether the exemption applies. *Heredia I* at *2 (citing *Hypolite v. Health Care Services of New York, Inc.*, 256 F. Supp. 3d 485, 491 (S.D.N.Y. 2017); *Santana v. Brown*, No. 14 Civ. 4279, 2015 WL 4865311, at *3 (S.D.N.Y. Aug. 12, 2015)).

As the regulation and DOL Opinion Letter make clear, however, only certain type of housework counts toward the 20% limitation. Exempt household work is "household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services." DOL Opinion Letter, 1995 WL 1032475, at *1. Non-exempt household work is "general household work" such as "heavy cleaning" that is not related to the care of the client. 29 C.F.R. § 552.6 (1975); DOL Opinion Letter, 1995 WL 1032475 at *1.

In this case, the Companionship Exemption applies. As Plaintiff concedes, she was Mrs. Fernandez-Diaz's "sole caretaker" for 125.5 hours per week. (Facts ¶ 1). Plaintiff worked as a live-in domestic services employee for Mrs. Fernandez-Diaz due to Mrs. Fernandez-Diaz's "declining health" and her typical duties included cleaning Mrs. Fernandez-Diaz's home; cooking; cleaning up after her, and sanitizing the bedding and linens. (Facts ¶ ). Any general household work that Plaintiff performed was always related to Mrs. Fernandez-Diaz's care and did not exceed 20 percent of the total hours that Plaintiff worked each week, particularly since she admits that she was working at all times in conjunction with the care she was giving Fernandez-Diaz, including

any work to the house that was de minimis anyway.  Accordingly, summary judgment is appropriate. *Kefeenie*, 2018 WL 4301558.

Below are several cases which have construed the companionship services exemption:

In *Corrales v. Bello*, 2009 WL 302271, *1 (S.D. Fla. 2009), on a motion to dismiss, the court found that "*employees such as Plaintiff, who provided companionship services for Defendant's paralyzed father, are **not** covered under the FLSA and Defendants are **not** required to pay Plaintiff a minimum wage.*"  Despite the Plaintiff's contention in *Corrales* that discovery might reveal that she performed "*general household work*" unrelated to the care of the father, the Court dismissed the contention given the **detailed allegations in the complaint** regarding the health condition of the father and the "*around the clock*" case he needed.

In *Salyer v. Ohio Bureau of Workers' Compensation*, 83 F.3d 784, 787 (6th Cir. 1996), *cert. denied*, 519 U.S. 964 (1996), the plaintiff was receiving payment from the workers' compensation bureau for her in-home services she provided to her permanently totally disabled husband from a work related accident, the Sixth Circuit affirmed a summary judgment finding that caretaking services that a wife provided to her husband fell within the companionship exemption. In *Salyer*, the wife "*help[ed] her husband dress, g[ave] him his medication, help[ed] him bathe, assist[ed] him in getting around their home, and clean[ed] his bedclothes when he los[t] control of his bowels.*" *Id.* at 787. "*These sorts of services fall squarely within the plain language of the statutory definition of 'companionship services,' i.e., services 'for individuals who (because of age or infirmity) are unable to care for themselves.'*" *Salyer*, 83 F.3d at 787. "*Because those services 'may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services,' we find the regulation to be directly on point.*" *Id.* at 787.  The *Salyer* court further stated:

Despite the wide swath these definitions cut, the FLSA does not apply to **everyone** who has a job.  Congress expressly excludes from FLSA coverage *"any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)."*

*Salyer*, 83 F.3d at 787-788.

In *McCune v. Oregon Sr. Services Div.*, 894 F.2d 1107, 1108 (9th Cir. 1990), *"[a]ppellants [were] full-time, line-in attendants for the elderly and infirm individuals unable to care for themselves."* *Id.* *"Appellants provide[d] a wide variety of daily services to their clients, including cleaning, cooking, and hygiene and medical care."* *Id.* In affirming summary judgment on the companionship exemption, the Ninth Circuit explained:

> The district court followed the federal regulation, holding that any household work related to the care of the individual would not be counted towards the twenty percent threshold. Appellants [employees] argue that it is unreasonable to distinguish between cleaning related to the care of the individual and general household work, and that the Secretary's interpretation should not apply. Once again, the Secretary's interpretation of the law is reasonable.

*McCune*, 894 F.2d at 1111 (emphasis in original).  *"In light of [the legislative] history, it is impossible to find unreasonable the Secretary's interpretation requiring household work related to the care of the individual to be excluded from the FLSA's coverage."* *Id.* at 1111.

In *Torres v. Ridgewood Bushwick Senior Citizens Homecare Council Inc.*, 2009 WL 1086935, *3-4 (E.D.N.Y. 2009), the Court addressed the issue of what constitutes *"general household work"* that would implicate the "20%" exception to the exemption. In analyzing the issue, the Court turned to a DOL opinion letter, dated March 15, 1995, which interprets the companionship exemption and 29 C.F.R. § 552.6. The [DOL] opinion letter begins by setting forth the definition of *"companionship services"* contained in §552.6. It goes on to state:

> [I]t is our [DOL's] opinion that such activities as cleaning the patient's bedroom, bathroom or kitchen, picking up groceries, medicine, and dry cleaning would be related to personal care of the patient and would be the type of household work

that would be exempt work for purpose of section 13(a)(15) of the FLSA. However, activities involving heavy cleaning such as cleaning refrigerators, ovens, trash or garbage removal and cleaning the rest of a "trashy" house would be general household work or nonexempt work that is subject to the 20 percent time limitation.

*Torres*, 2009 WL 1086935 at *4 (noting DOL opinion letter can be found at 1995 WL 1032475) (emphasis added). In *Torres*, the Court found that "*[n]one of plaintiffs' work constitutes "heavy cleaning" as described in the opinion letter….*" *Id.*

In *Terwilliger v. Home of Hope, Inc.*, 42 F. Supp. 2d 1231, 1232-33 (N.D. Okla. 1999), the district court analyzed the "*general household work*" exception to the companionship exemption. The Terwilliger plaintiffs were either Habilitation Training Specialist ("HTS") or House Managers in an organization that provides services to the developmentally disabled. The HTS employees provided specific training to clients based upon program plans involving skills in household chores and responsibilities such as cooking, cleaning, washing clothes, and money management among others. *Id.* at 1234. HM employees perform essentially the same functions as HTS but have added responsibility in the area of paperwork and money management. *Id.* "*[A]ll staff members were responsible for keeping clean the homes in which they worked*" with the expectation that the client would clean his/her own house, if they were able to. *Id.* at 1234-35. Some "*total care*" clients were not capable of cleaning. *Terwilliger*, 42 F. Supp. 2d at 1235.

After extensive analysis of multiple plaintiff's claims and job tasks, one of the summary findings by the *Terwilliger* court was that "*Home of Hope established by a preponderance of the evidence that no plaintiff spent in excess of 20% of his or her time performing general household work unrelated to the care of the client during the relevant time, given the sizes of the houses, the number of staff members assigned to each house, and the needs of the client's served.*" *Id.* at 1251 (emphasis added). In drawing a distinction between household work, the Special Master recommended that "*[i]n each instance, the test should be whether a particular task is necessary*

14

for the care or habilitation training of a particular client. If it is, then the task cannot be 'general household work' unrelated to the individual client, and it does not count toward the 20% exception." *Id.* at 1253. Thus, the record evidence (did not show that any plaintiff spent more than 20% of his or her total weekly work hours performing general household work unrelated to the clients they served. For some clients, plaintiff performed household work to teach them to perform household work of their own. For other clients, most of the work plaintiffs performed was "*related to the individual*" because those individuals were unable to do any household work on their own.) *Terwilliger*, 42 F. Supp. 2d at 1254 (emphasis added).

In *Rodriguez v. Jones Boat Yard, Inc.*, 2010 WL 7325250 (S.D. Fla.), the court found that "*any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves is exempt,*" are exempt from the minimum wage and maximum hour requirements found in U.S.C. 213(a)(15); 29 C.F.R. 552.6. The exemption extends to workers paid by third parties. *Buchner v. Fla. Habilitation Network, Inc.*, 489 F.3d 1151, (11th Cir. 2007).

The *Rodriguez* Court concluded that the Plaintiff's argument (that she worked as a domestic employee for more than 20% of the time) was without merit because the admissible evidence illustrated "*that nearly all of her work was related to the personal care of Ofelia (the elderly lady).*"

In *Kefeenie* (mentioned above), the court granted the Defendant's motion for summary judgment and found, among other findings, that the Plaintiff who slept at the Defendant's home for at least 5 nights a week and who worked 136 hours weekly was classified as "*live in domestic employee and, pursuant to the Live-in-Domestic Service Exemption, was exempt from overtime pay.*" The *Kefeenie* court also granted the Defendant her motion for summary judgment on the basis that the Domestic Companion exemption applied and stated that "*Plaintiff worked as a live-*

in-domestic services employee for Mrs. Martin due to Mrs. Martin's declining health and her typical duties included "cleaning Mrs. Martin's home and condo; cooking; coordinating Mrs. Martin's phone calls." The Court concluded that any general household work that Plaintiff performed was always related to Mrs. Martin's care and did not exceed 20% of the total hours that Plaintiff worked each week

**Plaintiff is Exempt. The "Companionship Services" Exemption Fully Applies.**

As noted above, the DOL regulations, a DOL opinion letter, and the interpretive cases defining exempt personal care as tasks that are related to the care of the infirm. *See*, DOL Opinion Letter dated March 16, 1995-1995 WL 1032475, *Torres* 2009 WL 1086935 at *5, *Terwilliger*, 42 F. Supp. 2d at 1254.   In *McCune* 894 F.2d at 1111, the exempt tasks can include household cleaning, shopping, pickup up medicine, and the like.   As the district court noted in *Terwilliger*, household work should be found to be "*related to the individual, if the individuals are "unable to do any household work on their own*." *Terwilliger*, 42 F.Supp. 2d at 1254 (emphasis added). "*Services performed by the plaintiffs on behalf of clients who could not perform such tasks independently constitute services related to the care of the client.*" *Id.* at 1236 (emphasis added).

The tasks that Plaintiff testified that she performed for Fernandez are tasks that have been found not to fall within the 20% exception, given Fernandez's condition and daily needs. For instance, in the DOL's opinion letter (which should be given *Auer* deference in this case), DOL specifically found that "*such activities as cleaning the patient's bedroom, bathroom or kitchen, picking up groceries, medicine and dry cleaning would be related to the personal care of Fernandez and would be the type of household work that would be exempt work for purpose of section 13(a)(15) of the FLSA.*" *Torres* 2009 WL 1086935 at *4 (citing 1995 WL 1032475). These are the same type of tasks that the Plaintiff testified to in this case.

16

### IV. SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE PLAINTIFF IS A SERIAL PLAINTIFF.

#### A. **The Serial Plaintiff Issue, the Lawsuit Is a Set Up, and Taxes**

The Court should also have serious concerns with the fact that the Plaintiff is a serial plaintiff who has filed other actions under the FLSA with the same lawyer, and who is openly flouting the tax laws. (Facts ¶ 36). While the fact, standing alone, that Plaintiff has previously brought an FLSA suit may not require the conclusion that she is a serial plaintiff, under the circumstances of this case and how it was filed and maintained and the fact that she never spoke with anyone about her pay, requires the conclusion that summary judgment should be granted, because it shows knowing misuse of the Court system. Plaintiff was under an obligation to say something given the previous suit, but Plaintiff testified that she never did. (Facts ¶ 34). This whole case is a case study on what is a complete and inappropriate misuse of the Court system by both the lawyer and the client.

While Diaz Fox requests that this Court grant sj on this record, at a minimum, and in the alternative, she requests that all attorneys' fees and costs be stricken, and that the Plaintiff and her attorney not be allowed to recover either. However, the striking of fees essentially lets Plaintiff off of the hook and she is absolutely engaged in misconduct himself as set forth herein.

This argument is not new, and the courts have long held that dismissal is appropriate "where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933). The Supreme Court has applied that rubric to an action for money damages under a federal statute (the securities laws), noting that the plaintiff bore equal responsibility for the violations he sought to redress and preclusion of the suit did not significantly interfere with the effective enforcement of securities law. *B. Eichler, H, Richards, Inc. v. Berner*,

472 U.S. 299 (1985). Accordingly, the Court here should grant sj because of the Plaintiff's stirring up (or in fact creation) of litigation. *Horne v. United Services Automobile Association*, 279 F. Supp. 2d 1231, 1237 (M.D. Ala. 2003) (citing *Brooks v. Bellsouth Telecommunications, Inc.*, 164 F.R.D. 561, 567 (N.D. Ala. 1995) (stating that "[c]ourts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation") (quoting *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266 (D. Minn. 1991))).

Numerous other courts have become concerned with serial plaintiffs, some of which have dismissed lawsuits because of it. *Brother v. Tiger Partner, LLC.*, 331 F. Supp. 2d 1368, 1374-75 (M.D. Fla. 2004); *Wilson v. Kayo Oil Co.*, 535 F. Supp. 2d 1063 (S.D. Cal. 2007) (dismissing an ADA case and issuing an order to show cause why sanctions should not be imposed); *In re Chiron Corp. Securities Litigation*, 2007 WL 4249902 (N.D. Cal.) (noting that class counsel's use of serial plaintiffs raises the specter of credibility problems and conflicts of interest, among other issues); *Molski v. Mandarin Touch Restaurant*, 385 F. Supp. 2d 1042 (C.D. Cal. 2005) (dismissed case for lack of standing, and noting that plaintiff would be declared a vexatious litigant whose counsel would be closely scrutinized in the future). Under the circumstances of this case, the serial plaintiff aspect weighs in favor of dismissal/sj.

**B.  The Failure to Provide a Presuit Demand**

In this district, because of the massive amount of FLSA suits being filed, the failure to provide a presuit demand may result in a denial of attorneys fees to the prevailing plaintiff. For many years, the federal courts have sometimes stricken a request for attorneys' fees in cases arising under the FLSA. *See, e.g.*, *Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1167 (S.D. Fla. 2003) (applying the Supreme Court's decision in *Buckhannon* in the Southern District of Florida to an FLSA case to deny attorneys fees, even though the Plaintiff was admittedly a

prevailing party).  It should be noted that the *Goss* court determined the plaintiff was a prevailing party *because a settlement was approved by the court.*

The rubric from *Goss* has now been affirmed by the Eleventh Circuit, and made to apply to a striking of attorneys' fees, when a plaintiff in a FLSA case sues certain defendants (there a law firm) for alleged wage and hour violations without first serving a presuit demand letter and providing the ability to pay whatever monies may be due. *Sahyers v. Prugh, Holliday & Karatinos, P.A.*, 560 F.3d 1241 (11th Cir. 2009) (striking claim for attorneys' fees because of a failure to provide a presuit demand letter when suing a law firm, just like here, because of the disgrace in not letting a peer have a chance to correct a wage issue).  Here, Diaz Fox is a lawyer, and thus the rubric should apply and the Court should grant summary judgment or dismiss the claim for attorneys' fees, since it is undisputed that no presuit demand was ever provided.  (Defendant's Affidavit ¶ 58).

### VI.   DIAZ FOX'S INDIVIDUAL LIABILITY IS DERIVATIVE OF THAT OF THE CORPORATE DEFENDANT.

If the Court grants sj in this case for the reasons set forth above, because Diaz Fox's liability is only derivative to that of the corporate Defendant's liability, Diaz Fox is therefore entitled to sj. *Zarate v. Jamie Underground, Inc.*, 629 F. Supp. 2d 1328 (S.D. Fla. 2009); *Casseus v. First Eagle, L.L.C.*, 2008 WL 1782363, 5 (S.D. Fla. 2008) (where "*the corporate Defendant is not subject to suit, and since [the alleged officer's] liability is only derivative to that of the corporate Defendant's, Patel v. Wargo, 803 F.2d 632, 637, 11th Cir. 1986), [the corporate officer] is entitled to summary judgment on that ground*.").

In *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986), the court concluded that status as a corporate officer alone is insufficient to render an individual an "*employer*" to hold the officer personally liable for unpaid wages.  Rather, the court held in *Patel* that to be personally liable as

an "*employer,*" a corporate officer "*must either be involved in the day-to-day operation or have some direct responsibility for the supervision of employee.*" *Id.* at 638. In determining whether a corporate officer is an "*employer,*" the Eleventh Circuit has inquired as to whether the officer was involved in compensation of employees, the hiring or firing of employees or other matters "*in relation to an employee.*" *Alvarez Perez*, 515 F.3d at 1161; *Patel*, 803 F.2d at 638; *see also* 29 U.S.C. 203(d); *Olivas v. A Little Havana Check Cash, Inc.*, 324 Fed. Appx. 839, 845 (11th Cir. 2009). In *Alvarez Perez*, 515 F.3d at 1160, the court held that "*there was insufficient evidence for a jury reasonably to conclude that Collins, Sr. was either involved in the day-to-day operation of the Longwood racetrack facility or was directly responsible for the supervision of employees during the relevant years.*"

In the instant case, the Plaintiff failed to demonstrate that Diaz Fox was Plaintiff's employer and did not meet the criteria under the "economic reality of the relationship" or "the circumstances of the situation" criteria.

The Defendants are filing this Motion because it is due today. We were afraid if we did not file this today and the Court did not grant our extension of time, we might be barred from filing such a motion. Unfortunately, we only have about half of the Plaintiff's deposition transcript, because the court reporter has failed to provide us the other half. Most of what was not provided contains extremely damaging facts to the Plaintiff. We reserve the right to supplement this Motion and Statement of Facts when we obtain the full transcript—there is a motion pending for us to obtain it.

Dated: October 13, 2020.

Respectfully submitted,

By: /s/  Chris Kleppin
       Chris Kleppin
       Fla. Bar No. 625485

cklepin@gkemploymentlaw.com
The Kleppin Firm, P.A.
*Attorneys for Defendant*
8751 W. Broward Blvd, Suite 105
Plantation, FL 33324
Tel. (954) 424-1933
Secondary E-Mails:    assistant@gkemploymentlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 13, 2020, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record (Zandro Palma, Esq.) or *pro se* parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

## SERVICE LIST

Zandro E. Palma, Esq.
zep@thepalmalawgroup.com
Zandro E. Palma, P.A.
9100 South Dadeland Boulevard
Suite 1500
Miami, Florida 33156

By: /s/ *Chris Kleppin*
        Chris Kleppin